Riddle *v.* Keller.

WILLIAM RIDDLE

*v.*

MATILDA R. C. KELLER et al.

[Filed April 10th, 1901.]

1. A contract made on Sunday is void *ab initio*, and cannot be ratified.

2. A subsequent admission of the maker that he had precedently executed it, is not such a re-creation of the contract as to give it efficacy.

3. Nor is such a declaration, coupled with a denial of the binding effect of the instrument, a sufficient acknowledgment to justify a commissioner of deeds in endorsing a certificate that the maker acknowledged that he delivered the instrument as his voluntary act and deed, &c.

4. In a case where an officer empowered to take acknowledgments, happened to be present and to overhear a dispute in which the maker of an agreement admitted that he had executed it, but denied its binding effect, and the officer stood by and listened, but did not address the maker or disclose his official character to him, the officer cannot rightfully certify that the instrument in question was by the maker acknowledged before him, &c.

On bill, answers and proofs.

The complainant files his bill praying that a deed made by one Matilda R. C. Keller to Henderson Synamon, conveying

lands in Atlantic City, may be declared to be void, and that Mrs. Keller may be decreed specifically to perform an alleged agreement, set out in the bill, to convey to the complainant the premises described in the deed.

The bill of complaint sets forth that Mrs. Keller was the owner of a tract of land in Atlantic City, which, it is alleged, she put into the hands of Hannah E. Kelly, a real estate agent of that place, with full power and authority to sell and dispose of the same; that, on the 7th day of October, 1899, the complainant purchased the tract from Mrs. Keller, by an agreement, in writing, made with Hannah E. Kelley, as agent for Mrs. Keller, at the price of $50,000, and paid on account thereof $100. The agreement was recorded in Atlantic county clerk's office on the 10th day of October, 1899. The purchase-money was to be paid at a later date, in part in cash and in part by mortgage. A copy of the agreement is annexed to the bill and made part thereof. The bill further states that the complainant attended at the time and place named for the performance of the agreement, with the cash and the mortgage, ready to perform it on his part, and that neither Mrs. Keller nor her agent appeared; that, after making the agreement and neglecting to perform it, Mrs. Keller, by a deed of later date, conveyed the premises to the defendant Henderson Synamon, a cousin of Hannah E. Kelley, which conveyance, the bill charges, was made with actual knowledge by him of the existence of the agreement for the sale to the complainant, and after record of the agreement in the county clerk's office. The bill further charges that the conveyance from Mrs. Keller to Synamon was procured to be made by Hannah E. Kelley after she had agreed, as agent for Mrs. Keller, to convey the premises to the complainant, and further charges that Hannah E. Kelley is interested in the title with Synamon, and that the conveyance from Mrs. Keller to Synamon was not in good faith, and was for the purpose of defeating the rights of the complainant in the premises. The bill prays that Mrs. Keller's deed to Synamon may be decreed to be void, and that she may be decreed specifically to perform her alleged agreement, set out in the bill, to convey the premises to the complainant.

There are two answers to the bill—one by the defendant Henderson Synamon, who admits that he is the present owner of the property; denies that the complainant purchased the same as stated in the bill, and charges that the supposed agreement for sale, referred to by the complainant, was made on Sunday, October 8th, 1899, and was purposely dated on the 7th, to avoid the effect of the laws of the State of New Jersey making void instruments made on Sunday. The answer further alleges that on a date subsequent to the time of the said agreement of sale, the complainant met the defendant Synamon by appointment, informed him that he did not want the premises and subsequently negotiated with Synamon for the purchase of the land, recognizing and treating the defendant Synamon as owner.

The defendant Mrs. Hannah E. Kelley also answers the bill, and denies that she had any authority from Mrs. Keller to sell and dispose of the land, and denies that she ever assumed or attempted to exercise any such authority; denies that the complainant purchased the land by the agreement named, and that he paid $100 on account, and avers that the agreement was, as stated, made on Sunday, October 8th, 1899, and dated the previous day, to avoid the effect of the law. The defendant also avers that she was induced to sign the agreement by fraudulent statements and deception on the part of the complainant, to the effect that the agreement was simply an acknowledgment to give to the complainant all the preference which she could control in the sale of the land, and that she signed the agreement without reading it; and further contends that as soon as she discovered that she had signed the agreement as agent for Mrs. Keller, she notified Riddle that he had deceived her, and demanded a return of it, tendering to him the check for $100 which he had given, but the complainant refused to accept the check or to return the paper.

When the cause came up for hearing the complainant offered, as his proof of his case, interrogatories addressed to, and answered by, Mrs. Matilda R. C. Keller, which it was agreed should be taken as testimony given in open court, and the deposition of the complainant, William Riddle, taken out of court, in the presence of counsel for defendants, upon examination and cross-

examination. The cause was argued upon the pleadings and these proofs only, the defendants offering no proofs.

*Mr. Thomas E. French* and *Mr. Lindley M. Garrison,* for the complainant. ·

*Messrs. Repetto & Repetto,* for the defendants.

GREY, V. C.

The whole frame of the bill of complaint in this case, both in allegation and prayer, is based upon the claim that the defendant Mrs. Keller has, through her authorized agent, the defendant Hannah E. Kelley, contracted to convey the land in question to the complainant for a bargained price; that the latter was ready to perform, but that Mrs. Keller had failed to keep her engagement. The prayer is that Mrs. Keller may be decreed specifically to perform her alleged contract, with the added prayer for general relief. The testimony is submitted by complainant in a somewhat peculiar way. It consists wholly of the written deposition of the complainant and the answers of Mrs. Keller to interrogatories and cross-interrogatories and the deposition of the complainant, William Riddle, taken before the hearing. No oral testimony was offered by either side, and the hearing was simply and only the arguments of counsel for the several parties. Under such circumstances, it is manifest that the case which the parties believed they were presenting, and which they intended to try, was set out in the pleadings, to which only the evidence was directed, and which asked a decree that Mrs. Keller be adjudged specifically to perform her alleged contract.

The agreement in question was drawn by the complainant himself, and was, at his instance, made on Sunday, October 8th, 1899, but, for the purpose of evading the operation of the law declaring contracts made on Sunday to be void, it was dated October 7th, 1899. That it was wholly void, because it was made on Sunday, is established law. *Gennert* v. *Wuestner, 8 Dick. Ch. Rep. 303,* and cases there cited. Being void, it was incapable of ratification. *Ibid. 305.* But it is claimed that this

defect can be, and was, remedied by a subsequent acknowledgment, which the complainant testifies was made by Hannah E. Kelley, at the Broad street station, in Philadelphia, on October 9th, 1899. The circumstances under which this alleged acknowledgement took place were these: The complainant had asked Hannah E. Kelley where Mrs. Keller resided, and had been refused the information. He subsequently ascertained that Hannah E. Kelley had gone into Pennsylvania, probably to see Mrs. Keller. The complainant, taking with him a Miss Saylor, who was a commissioner of deeds for New Jersey, residing in Pennsylvania, went to Broad street railroad station, in Philadelphia, and there waited Hannah E. Kelley's return. When she appeared, the complainant testifies the following colloquy took place:

"I said, 'Mrs. Kelley, have you seen Mrs. Keller?' She said, 'Oh! there is a man who got ahead of you and bought the lot.' I said, 'Indeed.' She said, 'Yes, he got there about an hour ahead of me.' I said, 'What about the agreement, Mrs. Kelley.' I produced the agreement from my inside pocket. She grabbed it and crushed it in her hand. I ejaculated sharply, 'Don't destroy that,' and she released it. I said, 'Mrs. Kelley, I am surprised. Do you mean to say that your agreement with me is not binding on Mrs. Keller?' She said, 'I do not acknowledge the agreement; I don't know of any such agreement; give me that paper back.' I said, 'Which paper?' She says, 'That agreement.' I then said, 'You do acknowledge that there is an agreement?' She says, 'Yes, but it is not binding.' "

The complainant further testifies as follows:

" 'You acknowledge this agreement, do you not?' and I showed her the original agreement, and she said, 'Yes.' I said, 'You signed it, did you not?' and she said, 'Yes.' I turned to Miss Saylor and said, 'Mrs. Kelley has acknowledged this agreement, witness it.' "

On cross-examination, the complainant gave the following testimony:

"*Q.* Will you please state in what shape Mrs. Kelley acknowledged the instrument. Please state what occurred at that time, and state in what manner Mrs. Kelley acknowledged this agreement?

"*A.* Orally; I said to Mrs. Kelley, standing at the Western Union Telegraph Office in the Broad Street Station, 'Mrs. Kelley, you acknowl-

edge this to be your signature?' 'Yes, I do,' she said. I said, 'Mrs. Kelley, you know you made this agreement with me?' She said, 'Yes, I did.' I turned to Miss Saylor and said, 'Have you heard Mrs. Kelley acknowledge this agreement?' and Miss Saylor said, 'Yes.'

"*Q.* Was this before or after Mrs. Kelley had attempted to destroy the agreement?

"*A.* After, I am positive it was after, because she attempted to grab the instrument when she first met us on the sidewalk.

"*Q.* Now, Mr. Riddle, isn't it a fact that all through this transaction Mrs. Kelley has, by words and actions, indicated and treated this agreement as null and void?

"*A.* It is a fact that Mrs. Kelley has treated this agreement as null and void ever since she visited Harrisburg, and met me in the Braod Street Station."

Subsequently, when asked, "*Q.* The evening that you and Miss Saylor met Mrs. Kelley at Broad street station, what did Miss Saylor do?" the complainant answered, "Stood by and listened."

An acknowledgment of the execution of a written instrument is, in its nature, a judicial act. The statute on the subject contemplates the acknowledgment before the officer, by the party who makes the instrument, not only that he signed it, but that he admits its binding force upon him. The certificate must declare that the officer informed the party of the contents, and that the latter acknowledged that he signed and *delivered the instrument as his voluntary act and deed*. The form of words in which the acknowledgment may be manifested by the party varies greatly in actual practice, but it is essential that there should be an admission by the maker of the present validity and binding force of the instrument. A declaration by the party admitting the previous execution of the instrument, coupled with an open and strenuous denial of its binding effect, is not such an acknowledgment as the statute requires. In this case it is quite apparent that Mrs. Kelley was neither informed of the contents by the officer, nor did she make any declaration of her knowledge of the instrument, which was equivalent thereto. Her acknowledgment amounted only to this, that she had previously executed the instrument in question, but she denied, persistently and openly, its binding effect upon her. Here was a denial, in the presence of the certifying officer,

that the instrument was her deed, and a denial that she delivered it as such. The transaction also lacked another incident necessary to the validity of an acknowledgment. There was no recognition by Mrs. Kelley that she was acknowledging the instrument, and it is quite evident that she did not even know that she was in the presence of an officer for the purpose. The complainant, who was interested in validating the instrument, and not the officer, conducted the colloquy. The certifying officer was conveniently near, but did nothing to indicate to Mrs. Kelley that the latter was 'making an acknowledgment.

An officer capable of taking an acknowledgment, who happens to be present when parties are disputing as to the validity of an agreement, cannot rightfully certify an acknowledgment because the maker of the instrument, in the course of dispute, mentions, *passim,* that she had signed it, yet all the while disputing its binding effect, and, in fact, seeking to destroy it. Such a transaction is a long way from that sort of re-creation of a void instrument which is necessary in order to give it new life and efficiency. None of the cases cited support such a contention. Those cited by the complainant, to the effect that an acknowledgment would make a void instrument valid, do not support that contention. They show that the act of subsequent acknowledgment was so conducted as to be a creation *de novo.* They are, and, in the nature of the case, must be, decisions that a previous attempted execution which is void, does not prevent a subsequent execution which is valid. No case is cited where an after acknowledgment or other admission of the previous execution of an instrument, void because made on Sunday, has been held to have validated the void instrument. All that Mrs. Kelley did on Monday was to acknowledge that she had previously made the agreement. This making was on Sunday, and therefore the agreement was void. Nothing that she did on Monday was in the nature of a declaration that she *then* acknowledged the agreement as of binding force.

It must be held that the agreement, on which the complainant bases his case, was made on Sunday; that it was therefore void and incapable of ratification, and that the sup-

posed acknowledgment on Monday was not a re-creation and new delivery of the agreement, but simply an admission of its previous execution on Sunday.

If, however, it should, for the sake of the argument, be assumed that the void agreement could be, and was, validated by the colloquy between Hannah E. Kelley and the complainant, in the presence of the commissioner, on Monday evening, October 9th, at the Broad street station, the agreement cannot be enforced.

The bill of complaint alleges an agreement by Mrs. Keller, through her authorized agent, Hannah E. Kelley. The evidence offered to show that there was an agency authorizing Hannah E. Kelley to bind Mrs. Keller by a written contract of sale is wholly insufficient, under the rulings of the court of appeals, in *Lindley* v. *Keim, 9 Dick. Ch. Rep. 419,* and *Scull* v. *Brinton, 10 Dick. Ch. Rep. 489.* Mrs. Kelley explicitly denies that she authorized the contract to be made. The only proof that she did authorize that contract is the testimony of Mr. Riddle, that she told him that Mrs. Keller's letter had instructed her to sell the lot, naming price and terms of sale. The cases cited have settled the law in this state to be, that such instructions mean no more than an authority to the agent to negotiate a sale by finding a purchaser, but do not empower the agent to bind the principal by a written contract. Besides, the declarations of the agent cannot establish the fact of the agency. *Gifford* v. *Landrine, 10 Stew. Eq. 127; affirmed on appeal, Ibid. 628.*

The complainant contends that even if Hannah E. Kelley was not authorized by Mrs. Keller to make the contract set forth in the bill, yet, having executed such an agreement in Mrs. Keller's name, without her authority, the law will raise a presumption that Hannah E. Kelley contracted on her personal responsibility, intending to bind herself. Many cases sustain the proposition that one who, without authority, pretends to act for another, is thereby himself bound.

There are several reasons which prevent the application of this rule to the cause now in hand. In the first place, the complainant has not framed his bill of complaint upon any

such case as he now, in argument for the first time, sets up as a ground for relief. Nowhere in the bill is it claimed that Mrs. Kelley had, without authority from Mrs. Keller, represented herself to be the latter's agent, with power to bind her by contract of sale. Nor is it alleged that the agreement was either in fact or in law, Hannah E. Kelley's contract. Nor is there any allegation that she is the owner of the premises, nor prayer that she may be decreed to convey them. None of the defendants were invited into court to respond to any such matters. This basis of complaint was introduced to the attention of the defendants by the argument of complainant's counsel. It is, at most, wholly a matter of proof, foreign to the issues presented by the pleadings, and evidently was not within the contemplation of the pleader who drew the bill of complaint. In *Vansciver* v. *Bryan, 2 Beas. 434,* Chancellor Green declared the rule to be well established that the court cannot notice matter, however clearly proven, of which there is no allegation in the pleadings. A party who has presented his case in his bill of complaint, and failed to substantiate it by evidence, cannot change his position and place his claim for relief upon matters incidentally disclosed in the proofs. *Pasman* v. *Montague, 3 Stew. Eq. 393.* In *Midmer* v. *Midmer, 12 C. E. Gr. 548,* the bill of complaint was based upon an allegation of a trust arising by express agreement. The bill gave no intimation of any other trust. The attempt was made to prove a resulting trust in another person, and to claim relief on that ground. The court of appeals held unanimously that it was rightfully refused.

In the second place, if it be admitted that Hannah E. Kelley's conduct operated in law to charge her personally with the obligation of an agreement to convey, all claim to enforce such an obligation is defeated by the fact that it was made on Sunday. The transaction was opened, negotiated, put in evidence by a written agreement, and closed, by its delivery, all on Sunday. The alleged agreement of Hannah E. Kelley arising by operation of law is void upon this ground of objection, precisely as is the alleged contract of Mrs. Keller, on which this bill of complaint has been drawn. Neither could be rati-

fied, neither was re-created or contracted anew by the trans-action of Monday night, October 9th, in Broad street station, for the reasons hereinbefore fully stated.

I will advise a decree that the complainant's bill be dismissed, with costs.