This is a bill to foreclose two certain building and loan mortgages upon two separate tracts of lands and premises in Atlantic City, New Jersey.
One of said mortgages was in the sum of $25,000, dated February 3d 1928, executed by Anthony M. Ruffu, Jr., as attorney-in-fact of Garibaldi League No. 1 of Atlantic City, a corporation of New Jersey, acknowledged before Anna M.P. Harrold, notary public of New Jersey, on said date, and recorded on March 24th, 1928, in book 495, page 225.
The other mortgage was in the sum of $25,000, dated June 2d 1928, executed by Anthony M. Ruffu, Jr., as attorney-in-fact of said Garibaldi League No. 1 of Atlantic City, a corporation of New Jersey, acknowledged before Anna M.P. Harrold, notary public of New Jersey, on said date, and recorded on July 11th, 1928, in book 510, page 334.
The Garibaldi League No. 1 of Atlantic City was a corporation of New Jersey, incorporated in 1908. Its membership consists of a large number of the Italian residents of Atlantic City. In some instances, the Italian form of the name of this company was used.
The Garibaldi Building and Loan Association was a corporation of New Jersey. Its officers and directors were almost, if not exclusively, Italian residents of the same city.
Anthony M. Ruffu, Jr., was, in his lifetime, one of the most influential of the Italian people residing in Atlantic City. *Page 367 
He was, at the time of his death, which occurred on June 23d 1930, the mayor of that city.
He was the sole owner, save for sufficient shares for corporation purposes, of the stock of the Ruffu Corporation, under which name, as a closed corporation, he transacted business.
He was an influential member of the Garibaldi League, and was elected and appointed, or at least, acting as "director procurator general" of the league. The term "director procurator general" as used in the minutes, has the same significance in Italian as "trustee" in English.
He was a director and president of the complainant company.
Mrs. Anna M.P. Harrold was the secretary of Ruffu, secretary of the Ruffu Corporation and secretary of the building and loan association. Mrs. Harrold was sometimes known by and used her maiden name, Anna M. Pennypacker.
Anthony J. Siracusa, also a very prominent citizen of Atlantic City, of Italian parentage, presently an assemblyman from Atlantic county, and assistant city solicitor of Atlantic City, was the solicitor of the building and loan association. He was not present at the meeting of the directors of the building and loan association when the loans evidenced by these mortgages were authorized, did not prepare the papers nor attend the settlement therefor, and had, at that time, no knowledge thereof.
The history of these two loans is as follows: On May 5th, 1925, Ruffu, as director general of Legione Garibaldi No. 1, made application to the directors of the Garibaldi Building and Loan Association for a loan of $25,000, which application was favorably acted upon on May 12th, 1925, and was granted, to take effect as soon as the building and loan association had available funds therefor. This application was signed "Legione Garibaldi No. 1, Anthony M. Ruffu, Jr., Gn'l Director," and the affidavit is made by Anthony M. Ruffu, Jr., general director, Legione Garibaldi No. 1, and is signed "Anthony M. Ruffu, Jr., General Director, Legione Garibaldi No. 1," and was subscribed and sworn to before Anna M. Pennypacker, notary public, New Jersey. *Page 368 
Shortly before the date of the mortgage, to wit, February 3d 1928, approximately two years and nine months after the granting of the loan, Ruffu instructed Mrs. Harrold to prepare the papers, order the searches, and to make settlement therefor. The solicitor of the building and loan association was not notified, nor was the settlement made at the office of a title company, as when "Ruffu was interested" settlement was made at the office of the Ruffu Corporation "to save expenses." At, or previous to the settlement Ruffu gave Mrs. Harrold instructions to draw the check, and it was drawn upon the account of the Garibaldi Building and Loan Association to the order of the Garibaldi League No. 1 in the sum of $25,000, and was signed by Joseph T. Bucci, treasurer, and countersigned by A.M. Pennypacker, secretary, and also countersigned by Anthony M. Ruffu, Jr., president. This check was at once deposited to the credit of "Ruffu Corporation," and bears the endorsement, in handwriting, "Garibaldi League No. 1 of Atlantic City, N.J." (written by one of the clerks in the office, Della Nichterline, who had no connection with the Garibaldi League), testimony of Mrs. Harrold, and by stamp "for deposit only to the credit of Ruffu Corporation." It bears the perforation of the bank "paid 2-4-28," the date of the check being February 3d 1928.
It will be noticed that this mortgage was withheld from record from its date for a period of one month and twenty-one days.
The bond in this case was signed "Garibaldi League No. 1 of Atlantic City New Jersey" (in typewriting), "Anthony M. Ruffu, Jr., attorney-in-fact" (in writing). The warrant was signed in the same form and both were signed in the presence of A.M.P. Harrold. The mortgage was executed "Legione Garibaldi No. 1 of Atlantic City, New Jersey" (in typewriting), "Anthony M. Ruffu, Jr." (signature), attorney-in-fact" (in typewriting), sealed and delivered in the presence of A.M.P. Harrold, the acknowledgment taken by Anthony M. Ruffu, Jr., attorney-in-fact, as his voluntary act and deed, before Anna M.P. Harrold, notary public of New Jersey. There is no seal of the Garibaldi League affixed to this mortgage. *Page 369 
The same course was followed in the second mortgage transaction. Application was made on November 22d 1927, and acted favorably upon on January 10th, 1928. On or about June 2d 1928, the building and loan association being in funds, a mortgage was drawn, at Ruffu's direction, and executed by him, and a check drawn in the sum of $25,000 and placed to the credit of the Ruffu Corporation. This check was drawn upon the account of the Garibaldi Building and Loan Association to the order of Garibaldi League No. 1 of Atlantic City, in the sum of $25,000, and was signed by Joseph T. Bucci, treasurer, countersigned by A.M. Pennypacker, secretary, and also countersigned by Anthony M. Ruffu, Jr., president. This check was at once deposited to the credit of "Ruffu Corporation," and bears the endorsement, in handwriting, "Garibaldi League No. 1 of Atlantic City, N.J., Anthony M. Ruffu, Jr. (signature), Gen'l Director," and by stamp "for deposit only to the credit of Ruffu Corporation." It bears the perforation of the bank "paid 6-2-28," the date of the check being June 2d 1928.
This mortgage was withheld from record until July 11th, 1928, a period of one month and nine days.
The bond in this case was signed "Garibaldi League No. 1, of Atlantic City, New Jersey" (in typewriting), "Anthony M. Ruffu, Jr. (signature), attorney-in-fact" (in typewriting). The warrant was signed in the same form and both were signed in the presence of A.M.P. Harrold. The mortgage was executed "Legione Garibaldi No. 1 of Atlantic City, New Jersey (in typewriting), Anthony M. Ruffu, Jr., attorney-in-fact" (in writing), sealed and delivered in the presence of A.M.P. Harrold, the acknowledgment taken by Anthony M. Ruffu, Jr., attorney-in-fact, as his voluntary act and deed, before Anna M.P. Harrold, notary public of New Jersey. The bond and warrant each bear the impress of the seal of Legione Garibaldi No. 1, Atlantic City, New Jersey. The mortgages appear to bear no seal. It is to be noted that the bond and warrant in each instance is made by Garibaldi League No. 1 of Atlantic City, New Jersey, the English name, and the mortgage in each instance is in the *Page 370 
name of Garibaldi League No. 1, but is executed Legione Garibaldi No. 1, the Italian form. I take it, however, that there is no significance in this action.
The Garibaldi League No. 1 received no part of the proceeds of these checks and secured no benefit therefrom, excepting the payment and cancellation of a mortgage of $9,000 made by George B. Jeffries and others to Newton Keim, dated December 8th, 1904, acknowledged December 10th, 1904, and recorded February 18th, 1905, in the clerk's office of Atlantic county, at Mays Landing, New Jersey, in book 80 of mortgages, page 363, which mortgage was a prior lien upon said premises. It became necessary for Ruffu to cause this mortgage to be paid and canceled, in order that the two mortgages being foreclosed should be first liens upon the respective tracts, and therefore be legal loans under the building and loan laws of the state.
The league had no notice of the existence of these mortgages until after Ruffu's death, he, in his lifetime, through his company, having paid the dues and other charges by the checks of that company. The Ruffu Corporation kept a separate book account of these charges, and from time to time statements were made by the bookkeeper and handed to Ruffu, but there is no evidence that he ever presented such statements to the league or to its officers.
None of the officers or directors of the Garibaldi Building and Loan Association, save those whose names appear upon the checks, had any knowledge whatever of the consummation of these loans on the date of the respective mortgages, the same being a closed incident between Ruffu, claiming to be a representative of the Garibaldi League, and Ruffu, acting as president of the building and loan association, and his satellites.
There is no testimony of the delivery to the building and loan association of any power of attorney authorizing Ruffu's execution of the mortgages in question. Certainly if there was no such legal authority vested in him, these mortgages are invalid.
The influence of Ruffu at the meetings of the league is *Page 371 
marked. He appeared at a meeting of the league on Sunday, May 1st, 1921, and asked the body to give him power to do certain acts. To what extent this request extended is questionable. The testimony of witnesses who were present is clear that no request for authority to mortgage the property of the league was asked for. Ruffu had in his hand a paper that was believed to be the power of attorney later executed, although it was not read. The minutes of this meeting, as translated into English, read as follows:
 "GARIBALDI LEGIONE NO. 1.
Minutes of the regular meeting May 1st, 1921.
President Emilio Rubei, seeing the number of members sufficient, opened the meeting at eight-thirty P.M., in the evening.
1. It was passed to pay six weeks of weekly benefit to Brother Cono Toscano.
2. A group of five new members were admitted.
3. It was moved and seconded, to sell $600 of Liberty Bonds, in order to realize some money to help to pay the buying of the house.
4. It was mentioned and it was seconded, to name Brother Anthony M. Ruffu, as a director procurator general of the affair of the house.
5. Motion was made to initiate a new body, with the name of Garibaldi Legione, Jr., formed with sons of the members of our Legione.
6. It was decided, in the assembly, to install the new administration, according to the nomination.
7. The meeting was closed in true order at ten-forty-five P.M.
President, May 15th, 1921. E. RUBEI. Secretary, ROCCO L. LOMBRADI.
(P.S. Director procurator general, in Italian, has the same significance as a trustee in English.)"
The secretary, however, certified that the following was the resolution as passed:
"Resolved, that Legione Garibaldi No. 1 give Anthony M. Ruffo, Jr., power of attorney to transact all business pertaining to premises Nos. 2, 4, 6 South Missouri avenue, in the city of Atlantic City, New Jersey, and that the proper officers be authorized to sign such power of attorney."
The power of attorney, as executed by the officers of the league, reads as follows: *Page 372 
"Know all men by these presents, That Legione Garibaldi No. 1, a corporation of the State of New Jersey, have made, constituted and appointed, and by these presents do make, constitute and appoint Anthony M. Ruffu, Jr., of the city of Atlantic City, county of Atlantic, and State of New Jersey, its true and lawful attorney for it and in its name, place and stead, to sue for, collect and receive, all debts dues and demands, now due and payable to it; to buy and sell, and contract for goods, wares and merchandise, and ship and transport the same, and to cause insurance to be had and made thereon; to draw and accept bills of exchange and orders, and to make, endorse and transfer promissory notes and other instruments, signing its name thereto, to sign, seal and deliver bonds and obligations, to give receipts, acquittances and discharges; to prosecute any action or actions in its name; to buy, sell, exchange, barter and rent land and real estate; and for that purpose to receive, sign, seal, deliver and execute leases, contracts and other instruments, as pertains only to the premises Nos. 2, 4, 6 South Missouri avenue, in the city of Atlantic City, New Jersey, giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes, as might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that its said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.
In witness whereof, it has caused these presents to be signed by its president, its corporate seal to be hereto affixed and attested by its secretary, on the third day of May, nineteen hundred and twenty-one.
 Sealed and delivered in presence of STEPHEN F. GELONA. LEGIONE GARIBALDI NO. 1, EMILIO RUBEI, President.
Attest: ROCCO L. LOMBARDI, Secretary."
The date of this power of attorney has manifestly been changed. The testimony is that it was signed and attested on the 1st day of May, 1921, at the time of the meeting above referred to, and delivered, after it was signed, to Mr. Ruffu. There is no affidavit of proof signed by the secretary proving this instrument. There does, however, appear endorsed thereon a form of proof, as follows:
"State of New Jersey, County of Atlantic, ss.
Be it remembered, That on this third day of May, one thousand nine hundred and twenty-one, before me, the subscriber, a notary public for New Jersey, personally appeared Rocco L. Lombardi, who being by me duly sworn according to law, did on his oath say that he is the secretary of the Legione Garibaldi No. 1, the grantor mentioned *Page 373 
in the foregoing indenture; that he knows the seal of said corporation, that the seal affixed to the said indenture is the common seal of the said corporation, that Emilio Rubei is the president of said corporation, and did by its order sign, seal and deliver the said indenture as its voluntary act and deed in the presence of said deponent; and that the said deponent did at the execution thereof subscribe his name as a witness thereto.
 STEPHEN F. GELONA, Notary Public for New Jersey."
It was testified that Lombardi did not appear before Stephen F. Gelona, who was, at that time, an employe of Ruffu's, acting as a clerk or other assistant in the office of the Ruffu Corporation.
The date of this alleged proof has been changed, as well as the endorsement on the back. I find as a fact that this instrument was signed by Rubei as president and attested by Lombardi as secretary, and handed to Ruffu on the first day of May, 1921, the same being Sunday. I am unable to determine when the seal was affixed. The revenue stamp was canceled on June 6th, 1921, the date of the record.
There is no testimony that this alleged power of attorney was ever presented to, or that any director or officer of the building and loan association ever had any knowledge of its execution, save, of course, Ruffu and perhaps Mrs. Harrold. An examination of the papers shows it to have been mailed for record by the Ruffu Corporation and returned to it. It was presented at the hearing by the representatives of the estate of Ruffu.
As has been noted, the applications to the building and loan association for these loans were signed by Ruffu as "director general." His title in Italian was "director procurator general," or in English, "trustee."
The proceeds of these loans never actually reached the league, nor can it be said that they, in effect of law, reached the league, unless the endorsements placed thereon by Ruffu or some of his clerks could have the effect of transferring the ownership, when possession of the checks never was out of Ruffu from the issuance of the same by him as president *Page 374 
of the building and loan association, until the deposit, by his instruction, to the credit of the Ruffu Corporation. He was acting in his capacity as president of the building and loan association, and there is no contention that he exceeded his authority as such president. The loans were granted to be effective when the building and loan association should be in funds. He was notified by the secretary of the building and loan association that the association was in funds for these loans and he, as president thereof, ordered the loans made.
It is unnecessary for the present purpose to characterize his conduct as president of the building and loan association as having been improper or illegal, or the consideration of what relief, if any, the building and loan association would have against Ruffu, were he still alive, or against his estate if the same was solvent.
It is manifest, also, that the application of the funds of the building and loan association were under his control, after the final granting of the loans. He well knew that the league had never granted him legal authority to execute these mortgages; he knew that no such authority was given him at the meeting of May 1st, 1921; he well knew that the copy of the resolution alleged to have been passed at that meeting was untrue, and he well knew that the power of attorney which he had had recorded, and which he held, and of which the building and loan association (save himself) had no knowledge, was invalid, and he must have known, therefore, without doubt, that he was committing a fraud upon the league, and he certainly knew that he had no authority to intermingle these funds with the funds of the Ruffu Corporation.
It is unnecessary to determine what the effect would have been had the building and loan association been deceived by a power of attorney executed by the officers of the league without authority. The building and loan association was not, nor was any of its officers, so deceived. It would, therefore, seem unnecessary for me to cite cases or determine the other points raised by the league that the said power of attorney was void because it was executed on Sunday, which *Page 375 
I find to be a fact, or that it was further nullified by an alteration of its date, which alteration I find to be a fact; that it was not acknowledged by the secretary of said association, upon which point the testimony is that the secretary never appeared and made oath as stated by the notary public; and that it was not duly acknowledged; and that the power of attorney does not, in itself, create the right to mortgage; and that it is contrary to the provisions of the by-laws of defendant association. Should I, however, be wrong in my determination of the facts, I find as a matter of law, that Ruffu had no authority to execute such mortgages.
"According to the established rule, powers of attorney will be given a narrow and restricted construction, and will be held to grant only those powers which are expressly specified and such others as are essential to carry into effect the expressed powers." 21 R.C.L. 881.
"The rule which prevents the agent or trustee from acting for himself in a matter where his interest would conflict with his duty also prevents him from acting for another whose interest is adverse to that of the principal. In law as in morals, it may be stated that as a principle, no servant can serve two masters."21 R.C.L. 827.
In Camden Safe Deposit and Trust Co. v. Abbott,44 N.J. Law 257, it is held: "A power of attorney, authorizing the agent to sign the principal's name to any paper or papers, notes, c., does not justify the signing of such documents for purposes outsides of the principal's business," and where a note was put forth for the personal benefit of the attorney, who controverted its proceeds to his own use, although issued under apparent authority, it was held in fraud of the principal.
Acknowledgments of the execution of a contract of sale of real estate made on Sunday are void under section 1 of the Vice and Immorality act (4 Comp. Stat. p. 5712) and cannot be ratified and given legal life by delivery of the contract on a subsequent secular day. New Jersey court of errors and appeals, 1926.Bowen v. Pursel, 100 N.J. Eq. 319.
I find, as a fact, that the power of attorney was executed and delivered on Sunday. *Page 376 
A contract made on Sunday is void ab initio, and cannot be ratified. Riddle v. Keller, 61 N.J. Eq. 513.
"That a deed delivered on a Sunday, is absolutely void, is clear. Whether an acknowledgment taken on Sunday, where an acknowledgment is necessary to give title (P.L. 1918 p. 119), is void, has apparently not been passed upon." New Jersey court of errors and appeals. Campbell v. Smullen, 96 N.J. Eq. 724.
In Riddle v. Keller, supra, "where an officer empowered to take acknowledgments, happened to be present and to overhear a dispute in which the maker of an agreement admitted that he had executed it, but denied its binding effect, and the officer stood by and listened, but did not address the maker or disclose his official character to him, the officer cannot rightfully certify that the instrument in question was by the maker acknowledged before him, c."
In the present case, the testimony is that the secretary of the company never appeared for the purpose of acknowledgment before the officer certifying thereto, and I have no difficulty in finding such to be the fact. Had he done so, this form of acknowledgment is sufficient. Laws of 1912 ch. 143 p. 208; Cum.Supp. Comp. Stat. p. 646. It is to be noted that I do not hold that it is necessary that a power of attorney to sell lands, c., must be acknowledged. In fact, in Tyrrell v. O'Connor, 56 N.J. Eq. 448,
it was held by the court of errors and appeals that "it is not necessary to the validity of a power of attorney authorizing an agent to agree in writing to sell lands and bind his principal to convey them, that it shall be proved or acknowledged and recorded." The amendment of 1929, chapter 307, page 715, only added the words "or any treasurer or assistant treasurer."
Nearly one hundred years ago, in 1836, in Adm'rs of White v.Williams, 3 N.J. Eq. 376 (at p. 385), the then chancellor said: "The principle of law admits of no dispute, than when a deed has been altered in an immaterial part, by the person to whom it belongs, after delivery, it will be avoided; and if it be altered in a material part, even by a stranger, the same result will follow. The alteration must be after the delivery." *Page 377 
The defendants have admitted their liability for the amount paid to cancel the mortgage existing upon its property at the date of the first mortgage. If counsel cannot agree upon this amount, I will take testimony at the time of fixing the final decree, to ascertain the same.
 A decree will be advised in accordance with these views. *Page 378